5-17-0-3-3-2. In re Marriage of Notestine. Man known as Thompson versus Notestine. Am I pronouncing it right? That's fine. I pronounce it at the same time. Okay. So I'll get your phone. Alright. You may proceed when you're ready. Thank you. May it please the court. Three years after Carol was divorced from her husband. And your name for the record? Oh, I'm sorry. Dave Aaron Kemp. I'm sorry. We know who you are. Four years after the divorce of Carol Notestine, now Thompson, she found out there was a tax refund that was due her and her husband for joint tax returns filed in 2007, 2009, and 2010. The total was $373,921. It wasn't told to her by the husband, but he had gotten a check, both names on it. That was for a three-year period. It was for a three-year period. That's correct. And for that tax refund, we had to file. That's why we got in court. We filed for the court to allocate that to us, and that's why we're here. Because Judge Chapman, who heard the trial, did not agree with us on that. We think he made a mistake, and it was an error for reasons that we keep in the brief. But simply put, in a divorce proceeding, if there's a settlement agreement, my client entered into a bargain. The bargain was that for the husband getting a custom steel processing plant, all right title and interest to a marital property, he paid him $750,000. As of that magic moment, it was a sale that was closed. Finished. Done. He received all benefit that could rise from that. If there was a stealing bargain, his business went up and shot to the moon, he would have kept all that money. But he also had all liability for it, too. So when the liability came, he had to pay some taxes on it. Because there was an improper deduction that was claimed during the marriage that resulted in a tax liability of somewhere over $400,000. Now he paid that, but that was part of the business. It was a debt that went along with the business. So when it came time for the tax refund to be given, the divorce papers did not contemplate that there would be more than one tax year involved. But they did address the issue of 2010 and said the parties, if there's a tax liability, he would pay it. But if there's a refund, it would split it equally. So what we found out was that there was a tax refund for three years. Judge Chapman, without taking evidence, heard argument, and basically ruled that because the husband had paid that amount of money for the business tax liability, that my client was not entitled to any of the marital tax refund. Did that include the 2010? That included 2010. So she never got half of the $43,000 that was refunded for 2010. Right. She didn't even get that. Let me interrupt you just one second because Justice Barbera has hit on it. I can't tell, the charts that were put into the record, did they set out what was refunded for each year so that we know the exact amount for 2010, 2209? Those were not my charts, but I do think that they set out that for tax year 2009, it was $267,000, and for 2007 it was $62,000. And give or take a few. No, but you can't give or take a few if you're enforcing a contract here. I apologize. I'm saying it for the purpose of what I'm saying now. I didn't memorize the numbers. Okay. The numbers are there. I could not find, and maybe there's a citation to the record, but I could not find where, even if the judge agreed with you or if this panel agrees with you, how much money was actually refunded for the year 2010? For the year 2010, it was, and I probably have to go through my notes, but it was $43,000. And change. And change. $43,958. That's correct, Your Honor. For the purposes of argument, I did not memorize those numbers. Okay. I understand that, but where does that number come from? Did the court have to find that based on a chart that was admitted? No. The court didn't address it. Basically, what the court said was because the husband had paid a tax liability that went with the business, that he should get all the refund, and that's how it went. So it's my opinion that from being present that the judge did not go through a fine-tooth comb over these numbers and just thought that the mere fact that the husband had paid a liability of a business that he was awarded, that he should get that tax refund. Well, the judge's order on paragraph Q, which I think is what is at dispute here, am I wrong about that, Mr. Franken? I'm going to catch up with you, Your Honor. I didn't memorize the paragraph, but I will be right there. Okay. It's page 2 of the court order, and it says paragraph Q does not control. And yet the line above that says that the husband asserts paragraph Q is strictly limited to 2010. That's correct. So did the husband make certain admissions? Or maybe I should ask Mr. Walsh. I think that's probably – you're asking me. I'm saying the husband made arguments, and there wasn't a factual hearing in which he would make admissions. The only admissions would be by his pleading or concessions. I think we did agree on the amount of the check. So that's why – I see what you're saying. Everything that was done for this, like, you didn't stipulate to evidence? I think along the way – I thought you stipulated to some of these charts that were admitted. And I'm going by my recollection. I know we stipulated to the number of the tax, because it was on the check, the tax refund. I believe we stipulated either directly or by my not questioning it that that was an S-corp, that the business that he got was an S-corp. Other than that, I don't remember there being a – I know there's no set fixed stipulations that we had. Well, in the Eppley's brief, there are charts. And I can't tell whether the charts that are attached to the brief were stipulated to in evidence, but I'll ask the Eppley. You may go ahead. I think it's better to ask Mr. Wallace. I have no doubt. Concerning those charts, you never disputed them in your report brief or anything like that? Not at all. I mean, the numbers are the numbers. The question is whether they were in evidence or not. And that's really not a dispute. We don't dispute that Mr. Northenstein had to pay taxes for a business he was awarded. We're simply saying that goes with the business. It would create a precedent that would be very difficult in doing family cases and you're doing property distribution to say to someone,  and then say, oh, by the way, you may have to watch because later on you might have to indemnify your ex who got the business for any tax liability that might result or for tax that might result in the business. And that's not in here. And that is absent. There's no obligation for her to indemnify him at all. And the Ormiston clearly says that the tax refunds on their property, it's a species of right that occurs during a marriage, only during a marriage, and they file joint tax returns. But you can amend that by contract. You can. And isn't that really what they're arguing is that we have a contract here? I'm not sure if that's what they're arguing. I think that's probably an argument to be made, so I agree that's an argument. If that was the argument, I don't see the amendment. I don't see it here. Well, you don't think paragraph 2 that says, in the event there's a refund from the federal and or state income tax returns, the parties agree to split the same on an even basis. That deals only with the year 2010. You don't think that's contractual if it's in a marital settlement agreement? There are two things. I agree with you that it's contractual because it's in the settlement agreement, but I disagree that it's limiting in nature because, and I cite Hall, which in this case, and this happens frequently, which parties agree to divide equally the marital portion of the pension. And somehow one is omitted. Well, the court interpretation is that Hall, the intent of it, is they gave us a mechanism by which we would divide these things and do this. It was not contemplated at the time, no evidence was presented at the time, that 07 or 09 would be in play. This is something that occurred, my client finds out, four years after the divorce, that there's a check coming back. And so it was not contemplated at the time. Had it been contemplated, it probably would have been specifically addressed, but no one knows that because he now has a tax liability because of wrongfully claiming things on his corporation, that that then would cause them to amend their tax returns as joint marital filing parties. So you're not suggesting, although at the time the marital settlement agreement was entered into, that the husband knew that he had money coming back for those years? No. I'm saying no until three or four years later on. I think that's the case. I think what happened, and that's why it probably took three or four years, they really didn't know. They were dealing with the IRS, they were doing something. So the only speculation to say, you know, 10 was the one that we knew about. 10 was the one that they were aware of. But even Hall says, you know, you set up a mechanism by which you do this, and it's very common where people, oh, I forgot I have that old pension when I was an iron worker, and it's worth X dollars. Well, you go back and you use the same formula and you do it because we've set that up. But nowhere does it say you set up what they suggest, which is my client would indemnify him from her tax refund, which is marital property, to help his business, the one that he said, I'm taking. He struck a bargain, I'm taking this business and I'm going to run with it. And hopefully he's successful. But she also gave up her right to any part of that business, good or bad. And as you pointed out, any of the bad, he paid, and he never asked for contribution. Right. But then it would have been just as easy in the marital settlement agreement, rather than to specify 2010 could have said any year tax refund would be split evenly and any tax obligation would be sole responsibility of the husband because he's receiving the business. With foresight it would be easy. I didn't draft this. I would suggest that you're right, that it would be easy to do that. But also suggesting that it's not normal in 2016 to amend a return for 2007 or 2009, or even in 2011 to know who could amend a 2007 return, usually go back two years. So you can fault the parties for not seeing the future, what it would mean, but you can't fault my client because she signed away a business in which you cannot grab back liability once you sign over, which you really want to see as a crawlback. And the court cited bankruptcy cases. Well, there are crawlback provisions in bankruptcy, and that's different than a marital estate. A bankruptcy estate is not the same as a marital estate. So while it may be okay in a crawlback in a bankruptcy, you don't do it in a divorce. And that's why you want people to know where they stand on it. And where they stand on it makes sense. But, Mr. Fahrenkamp, following up on what Justice Barberos just asked you, if a party enters into an agreement, it seems to me that the law says that this agreement controls over and above any equitable concerns such as you're saying. Well, we didn't know that they could, you know, amend in 08 or 07. If you knew 2010, which seems to be the suggestion, although we don't know, but somebody knew something about 2010 because it's included. So why wouldn't you put in any instead of 2010? See what I'm saying? I understand. And I think it's because they didn't have foresight. But I believe that that does not then revert to him being able to keep a refund. There's a difference. But nobody alleged that the contract was ambiguous. We have a contract, right? And even if we disagree with the court regarding paragraph Q, because the court says it doesn't control and doesn't say why it doesn't control, but even if we disagree as a panel, why aren't we just stuck with 2010? Because the order does the agreement. The order does not say he's entitled to indemnification on a debt that he took for the business. There's nothing there. But like Justice Barbaros said, she took the chance too. I mean, she gave up everything. She could have maybe held an interest at least. She thought that this business was going to go, you know, out of, you know, wealthier. I agree. But part of the chance was that she gave up. She said, look, I'm going to take money, not going to gamble on the business, and I'm going to be free of liability. So don't try to hit me with a tax liability that goes with that business and make me pay for half the liability because they each took a chance. And this is any transaction like this. If we say that someone can sign over rights to a business for cash and later on there's found to be a liability that goes with the business, then that will affect every moral settlement agreement we have. Because if there's a business involved, you cannot assure your client that there's not going to be some ghost claim made later on that, oh my gosh, there's a tax liability, you owe me for it. Because there's nothing in this agreement that says anything like her having any interest in and nor any liability for indemnifying him for a tax liability. Well, but it does say in paragraph Q again, any taxes due, that they're going to file, okay, but then it says specifically any taxes due on federal and or state income tax returns shall be paid by a respondent. Correct. The husband. Sure. That's what we're saying. Go ahead. So she bargained for the release of her liability. Correct. And by what your earlier statement with regard to, you know, neither party knew that they were going to have this liability and neither party knew that they were going to end up with this refund. It seems to me that, you know, to further your argument, had he known that there was going to be a liability and then a lesser refund, he may have bargained differently for the $750,000 too. He may have taken all that into account. So, I mean. He shouldn't. Right. There's always a fear factor of what we're getting into in the bargain, but neither party, you know, was, I mean, I'm assuming both parties were represented, both parties were intelligent enough to understand what they were signing and bargained for and that both parties entered into the contract freely, specifically only allowing for refund of $2,010,000. I'll follow up on that. Can I just explain? What you're explaining, your concern agrees with me and I'll explain why. Number one, we didn't even get $2,010,000. So, I mean. Right. We made a mistake there. You didn't interpret this some way. You didn't give us what they bargained for. But more than that, they each bargained. Am I finished? You want to finish? Go ahead. They each bargained for risk and reward, and she was removing risk for liability and getting a reward, and they both did it. And we can't have us looking back now and rewarding him for a risk he was supposed to take out of her tax refund. Thank you. You'll have a chance, Mr. Parent, for rebuttal. Mr. Wallace, how are you, Mr. Wallace? Very good, Justice. Thank you. Good to see you. Good to see you as well. May it please the Court, Steve Wallace for Patrick Notasteem. I'd like to clarify one thing. The charts that appear in our brief simply summarize the tax returns and the checks that were issued by the Internal Revenue Service. That's it, pure and simple. I don't think there's been any dispute as to what the numbers were that Mr. Notasteem paid $492,000 in tax liability and that the refunds were roughly $373,000. Were there stipulated facts? Were these admitted as stipulations? I don't think there were any disputes, Your Honor. I don't know that we formally stipulated, but I don't believe there were any disputes as to those amounts. Well, I think that's what we're trying to get at here is the evidence before the Court and your summary in your brief, which is very helpful, by the way. I don't see, and I think this is what Justice Moore is asking, I don't see where the parties put evidence before the Court. There was just argument, but there wasn't a record. There was. You are correct, Your Honor. We did not put on testimony there was not a formal stipulation added into by the parties. The Court must have had a stipulated agreement before it that this is the marital settlement, even if it took judicial notice of it, it had to have. It was admitted. I believe both parties admitted this was the marital settlement agreement, and I believe both parties acknowledged that these were the tax liabilities and these are the tax refunds. I don't believe Mr. Farron can acknowledge that a few minutes ago, but there's no dispute as to those facts. So at least the lawyers represented that. Yes, Your Honor. Okay. And I would also represent to the Court that the clients were all present, were both present at the two hearings. They were both present in the courtroom at the time. So why doesn't paragraph Q control? Because, Your Honor, I think there's a separate provision, and I think it goes to the nature of custom steel. There's a separate provision in the marital settlement agreement that says, my client paid Mr. Farron's client $750,000 for custom steel, for her stock in custom steel, which was marital property. And I believe, Your Honor, because of the nature of custom steel as a creature of tax or as a tax creature, that makes the difference here. Custom steel is a subchapter S corporation as compared to a subchapter C corporation or a C corporation. Okay. And I don't want to interrupt. I try not to interrupt, but I tend to. But you're way beyond the record here. I don't see any of this discussion in order or – Understood, Your Honor. I mean, you can go ahead, but I just don't think this is – I think we're going down a road that's not – I understand. I'll stay – That's what I'm worried about. I'll stay for the record, Your Honor. Yeah. That's all we can do. That's all the Court can do. I understand, Your Honor. But I believe that's what Judge – in the opening portion of his opinion, his order for Judge Chappin was referring to the nature of appropriation. Okay. In any event, Your Honor, I believe – Well, where is that? Because he says as an S corp, the husband paid the taxes. In paragraph 3, he says the firm was the source of the disputed as an S corp. Yes, Your Honor. That's all he says. That's all he says is because it was an S corp, the husband paid the taxes post-dissolution, which I don't think I understand even that. Well, I believe what he's referring to is – and this is a matter of law under the Internal Revenue Code – that the income is not taxed to the corporation. It passes through, and so it is taxed to the – by the individual, the same would hold true of the refunds, that they all pass through. As opposed to a C corporation, which is taxed at the level of the corporation, not at the level of the shareholders. And that's in the Code, Your Honor. But having said that, Your Honor – We can take notice of that. Yes, Your Honor, since it is a matter of law. Your Honor, I think that's why he is saying that paragraph Q does not control. But I think in fairness to the petitioner, in the event paragraph Q does control, it would require an equal division of the 2010 refund, which Judge Chavin awarded in its entirety to my client. So it would require an equal division of the 2010 refund if it does control, because it is limited to the year 2010. So she would be entitled to $21,979. Correct, Your Honor. Correct, Your Honor. That's if this Court concludes that paragraph Q does control. And I would also suggest to the Court that the bankruptcy cases that we cited, while not binding on this Court, are in fact persuasive, and the Court can rely upon them. In 1979, the U.S. Supreme Court, in the case of Butler v. United States, found that state law controls property rights in a bankruptcy case. Why is bankruptcy relevant? I know your practice is a lot of bankruptcy. Yes, Your Honor. But why are we in bankruptcy right now? We're in bankruptcy because there are cases that we've cited, and that Judge Chavin cited in his decision, concerning division of tax refunds. And each of those cases are referable to state law. The question is who was entitled to this tax refund or that tax refund, and the bankruptcy courts there refer to state law, Illinois law, to make that determination. Okay. But Illinois law says very clearly that if you have a marital settlement agreement, that that's a contract that should be construed for purposes of dividing marital property. Yes, Your Honor. And so we have a marital settlement agreement and a motion to enforce that agreement, and it seems that the focus should be on that agreement, not on general Illinois law. Understood, Your Honor. Understood. Tell me why I'm wrong about that. You're not wrong, but I think the case law may help when we are construing this agreement. But the agreement on its face refers only to 2010. It doesn't refer to any other year. That's why I indicate, Your Honor, that if this court finds that paragraph Q does control, then in fact the petitioner will be entitled to one-half of the 2010 refund and nothing more, because paragraph Q only contemplates 2010. It refers to a refund from the federal and or state income tax returns. It does not refer to any tax returns. It does not refer to all tax years. It refers only to 2010. What about the courts, and maybe this is where your bankruptcy cases are going, but the court says, I thought this was interesting language, the husband paid 100% of the taxes, a sufficient equitable reason to permit him to receive the entire refund. You would agree with me that equity only comes in if there's not a valid contract. No question about it, Your Honor. So I'm wondering why the court is using equitable relief, or it seems to be using equitable relief. What do you think about that? I don't think I agree with the court in using equitable relief as a basis. Do you think he did? I don't think he did, because I think he went further, and he referred to, first of all, the nature of the corporation in the opening paragraphs of his decision, and then analyzed paragraph Q of the agreement. So I don't think that he made the decision based upon equitable grounds. I think he made it maybe threefold. First of all, based upon the nature of the corporation and how the taxes pass through. Secondly, paragraph Q, finding that it refers only to 2010 and no other tax years. And third, equitable grounds, because I think had he concluded simply that based upon principles of equity, it should be distributed the way he did. Your Honor, I don't think he would have found a need to go farther and look at the nature of the corporation and analyze paragraph Q of the Nova-Stalin Agreement. Well, Justice Barbera has raised the issue of bargaining, and so when you bargain for this relief, whether it's good or bad, I'm sure that it seems like the status of the S Corporation would have been taken into effect because it's the husband who's going to have to pay directly because of the way the taxes flow. Yes, Your Honor. Yes. Certainly the parties must have considered it when they're negotiating, because that was a substantial portion of their settlement, was the disposition of the custom seal property. And had they contemplated more in 2010, the subpoena certainly would have said so. The $750,000 that was paid in full prior to all of this. Yes, Your Honor. So just to boil it down to assessments, your position is you believe Judge Chapman was correct and that your client is entitled to the full $373,921. However, if you're wrong, the most he's entitled to is the $21,979, which is half of the $43,000 for 2010. That's half of the 2010, yes, Your Honor. That's correct. My close position is based upon the nature of the company, Your Honor, that he's entitled to 100% of the refund because he paid 100% of the taxes and is still short $120,000. But if the court does not believe that controls and that paragraph Q instead controls, I would concede that Mr. Farrington and his client petitioner would be entitled to one-half of the 2010 refund. Unless the court has any further questions, I'm not going to take any more of your time. Thank you, Mr. Walsh. Thank you, Your Honor. I appreciate that. Thank you, Your Honors. Mr. Farrington? Where does it say in the agreement that he gets all the tax refund? If we're talking about the agreement, it says nowhere that he gets it all. And if the law is that it's marital property, which is the law, the court has to recognize it at the trial court level, that the law is that a tax refund is marital property and the mechanism for division is set up at least in part by the 2010, where does it say that the default is that it all goes to him? And that's what's missing. I think the court went to extraordinary lengths to find a way to give him money but really didn't have anything in the marital settlement agreement or under the Marital Dissolution Act, which is the one he's supposed to be using, not the bankruptcy code, the Illinois Marriage and Dissolution of Marriage Act, which says it's marital property. So this is money that was paid in by the marital estate. Marital estate paid this in, and that's why it's getting it back. The money he's paid from his business was what he bargained for. He bargained for that business. Doesn't the contract in that settlement agreement contemplate and account for the marital property aspect of the refund when it says he gets business free and clear for paying $750,000. She releases all interest, except she does get the refund, if any, from 2010. Doesn't that pretty much clarify that if it's not stated otherwise, that she's released all of her interest? Paragraph M of the marital settlement agreement clearly states she's releasing all interest, title and interest and everything else, for the $750,000. Once that's paid, she's releasing all interest, except for what the contract says she's entitled to, and that is only 2010 refund. So anything that's not included in there would be his. No, I disagree. I think with respect to... I know you would. No, it doesn't. It doesn't say anywhere that they bargained for those tax refunds. Because nobody would. But so they didn't bargain for it. It wasn't part of the bargain. What we do is have a marital estate, and at worst... What was the bargain for? There was the S-Corp in its condition, whatever that condition was. And the only way I know, the condition that you did this, and that includes anything, the liabilities of it, any assets and equities of it, or refund, tax refunds, or what if a supplier owed them, come to find out there was a supplier of them and owed him $200,000? Is she entitled to that? No, but that's different, because the business carried with it the tax liability. The business did, not the marriage. The business did, and he bought that. And he said, I'm buying for liability. So when you've got a liability, if you sell me a business, and I buy it lock, stock, and barrel, and I say I'm responsible for it, I can't go back after you saying you owe me money because I had to pay a tax liability on it. Right. That's what he's asking her to do. He's asking her to pay for marital estate for a tax liability. He didn't ask for any other money from the liability. He's only suggesting that any of the refunds, The other ask that the reverse of the liability is his as well. It's not because it's indemnification. She's not required to indemnify. That business, whatever it's worth, and we don't know, the judge didn't know what the business is worth, could well pay that. That's what we can speculate, because we can speculate it can't or is easily paid. It was paid. There's no dispute it was paid, so there's plenty of money there enough to pay that. So to speculate that this is some poor fellow who was taken advantage of and didn't know what he was doing and bought a steel company that he managed. Let's look at it from the other perspective too. If you're asking us to look from the perspective of, Oh, poor me, I made a bad deal, I could have gotten more out of it. I should have bargained for more than 2010. I should have had all the taxes and refunds included and not just 2010. That wasn't part of the bargain. And I think, from my client's point of view, I would never say that she's saying poor me. I think she's just asking for what is fair to her. Oh, because you did. Oh, thanks. But it's, it's, it's marital property. And if you take a liability and you pay it, just because there's a flow that goes back to the marital estate, doesn't mean you can capture that too. He wants to have his cake and eat it too. He wants to say, I'll take all responsibility for this debt, but by the way, I'm going to make you pay for half of it from our tax refund. And I think that's the tough thing that is the result of what the court did. Thank you very much. Okay, this matter will be taken under advisement and we'll issue an order in due course. Thank you.